UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RICHARD HENDERSON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:10CV01503 AGF |
| ) | |
| BILTBEST PRODUCTS, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion for Contempt against Defendants (Doc. 66). In their motion, Plaintiffs request an order holding Defendants Biltbest Products, Inc. ("Biltbest") and Timothy Stokes in contempt of court and that a monetary compliance fine of $200.00 be imposed against Defendants, jointly and severally, for each day of their non-compliance with the Court's October 4, 2010 Order. Plaintiffs also request their attorney's fees and expenses in bringing the Motion. In their post-hearing brief, Plaintiffs also request that Mr. Stokes and Biltbest's comptroller, Ed Sutton, be incarcerated until they purge themselves of the civil contempt. An evidentiary hearing was held on December 20, 2010 on Plaintiffs' motion for contempt and motion for preliminary injunction,[1] at which counsel for Plaintiffs and Defendants appeared.

---

[1] Plaintiffs' Second Motion for Preliminary Injunction (Doc. 66) is addressed in a separate Order filed this day.

**Background**

This is an action brought by 62 individual plaintiffs, all of whom are union members who worked for Biltbest (hereinafter referred to collectively as the "Employee Plaintiffs"); their collective bargaining representative, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union Local 400G (the "Union"); and the parent of the Union, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (the "International Union").

This action was brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1132, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, against Defendants Biltbest, a Missouri Corporation; and Timothy D. Stokes, the owner, sole officer, and director of Biltbest, as well as the sole trustee of the Biltbest 401(k) plan. In the Second Amended Complaint, Plaintiffs seek to have Defendants reestablish the 401(k) plan and the group medical insurance they assert was cancelled in violation of their collective bargaining agreement, and restore all benefits to Plaintiffs. They also seek to collect union dues, amounts garnished from employee wages for child support, and damages from Defendants.

On September 9, 2010, Plaintiffs filed a Motion for Injunctive Relief against Defendants concerning the discontinuance of the employer's collectively bargained 401(k) plan and group health insurance and failure to remit union dues and wages garnished for child support payments. (Doc. 10.) Following a hearing on Plaintiffs' Motion on September 28, 2010, the parties reached an agreement on the issues raised,

which agreement was adopted by this Court in an Order dated October 4, 2010 (the "October Order").

**Discussion**

Plaintiffs seek an order holding Defendants in contempt for failing to comply with the October Order. The United States Supreme Court has stated "it is firmly established that the power to punish for contempt is inherent in all courts." Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (internal punctuation and citation omitted). "One of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." Chicago Truck Drivers v. Brotherhood Labor Leasing, 207 F.3d 500, 504 (8th Cir. 2000) (citing United States v. United Mine Workers, 330 U.S. 258, 290 n.56 (1947)). Civil contempt sanctions may be employed to coerce compliance with a court order. Id. (citing United Mine Workers, 330 U.S. at 303-04). "Either incarceration or a fine may accomplish the purpose of coercion . . . . " Id.

Civil contempt proceedings may be employed in an ERISA case such as this to coerce the defendant into compliance with a court order or to compensate the complainant for losses sustained or both. Chicago Truck Drivers, 207 F.3d at 504-05. Either incarceration or a fine may accomplish the purpose of coercion; where compensation is intended, a fine is imposed payable to the complainant. Id.

The Court's contempt power also extends to non-parties who have notice of the Court's order and the responsibility to comply with it. Id. at 507 (court's payment orders in ERISA case were binding upon the named corporate defendant's sole shareholder and

corporate officer and agent, even though the order made no specific reference to him); see also Electrical Workers Pension Trust Fund v. Gary's Electric Serv. Co., 340 F.3d 373 (6th Cir. 2003) (owner of corporation, as an officer of the corporation responsible for its affairs, was subject to the court's contempt order just as the corporation itself was even though he was not a named defendant). Indeed, the Supreme Court of the United States, in a case where a corporate officer who failed to comply with a subpoena *duces tecum* was held in contempt of court, stated:

> A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.

Wilson v. United States, 221 U.S. 361, 376 (1911).

Courts in this district have previously imposed compliance fines in similar ERISA delinquency collection cases and have ordered a defendant to reimburse the plaintiffs for attorneys' fees incurred in attempting to compel compliance with a Court order. See, e.g., Greater St. Louis Construction Laborers Welfare Fund v. Akbar Electric Serv. Co., Inc., No. 4:96-CV-1582 CDP (E.D. Mo. Apr. 21, 1997) (ordering defendant to reimburse plaintiff for attorney's fees); Greater St. Louis Construction Laborers Welfare Fund, et al. v. Marvin Steele Enters., Inc., No. 4:96-CV-1073 ERW (E.D. Mo. Mar. 21, 1997) (ordering a compliance fine of $200 per day). Incarceration has also been used to compel compliance with Court orders in the context of ERISA delinquency actions. See, e.g., Marvin Steele Enters., No. 4:96-CV-1073 ERW (ordering that a bench warrant issue for

4

the arrest of the individual defendants). In addition, the Court has imposed contempt sanctions on a corporation's officer who failed to participate in post-judgment discovery in an ERISA delinquency action. See, e.g., Carpenters' District Council of Greater St. Louis and Vicinity v. DLR Opportunities, Inc., No. 4:07-CV-00061 CAS (E.D. Mo. Feb. 22, 2008) (imposing a compliance fine of $100 per day on the defendant's president). A party seeking civil contempt bears the burden of proving by clear and convincing evidence that the alleged contemnors violated a court order. Chicago Truck Drivers, 207 F.3d at 504-05.

Here, Plaintiffs have proven by clear and convincing evidence that Defendants failed to comply with several provisions of the October Order. Pursuant to paragraphs 1 and 2 of the October Order, Defendants were required to "remit all unpaid union dues for the period of November 2009 to date" and to timely remit union dues in the future. Vicky Wolk, the president of the Union, testified that union dues were withheld from the Employee Plaintiffs' wages in September 2010, and that the Employee Plaintiffs have not yet received wages for the nine days they worked in October 2010. In response to an investigation by the Department of Labor, Defendants submitted minimum wage payments for the Employee Plaintiffs' work performed in October 2010 directly to the Department of Labor. Defendants have not yet paid the amounts above minimum wage for that time period, and there was no evidence presented at the hearing regarding whether Defendants withheld union dues from the minimum wage payments made to the Department of Labor.

Ms. Wolk testified that in her position as president of the Union she has not received the union dues for September 2010 and October 2010. Michael Susic, a representative of the International Union, also testified that Defendants have not remitted the unpaid dues to the International Union for September 2010 and October 2010. Plaintiffs estimate that the amount of unpaid dues probably totals a few thousand dollars, however they are unable to determine the precise amount due without obtaining information from Biltbest regarding the hours worked.

Plaintiffs having established non-compliance, the burden shifts to Defendants to show an inability to comply with the Court's Order. Chicago Truck Drivers, 207 F.3d at 504-05. A mere assertion of "present inability" is insufficient to avoid a civil contempt finding. Rather, alleged contemnors defending on the ground of inability to comply must establish that (1) they were unable to comply, explaining why "categorically and in detail;" (2) their inability to comply was not "self-induced;" and (3) they made "in good faith all reasonable efforts to comply." Id. at 506.

Defendants presented the testimony of Ed Sutton, who appears recently to have assumed the duties of Biltbest's comptroller. Mr. Sutton explained that he had assumed the $22,322.13 in union dues that Biltbest paid to the International Union in November included the delinquent union dues through September 2010. He later acknowledged, however, that he had no factual basis for that assumption. He admitted that he had intentionally not paid the union dues for October 2010, explaining that he felt that wages for that month should be paid before union dues. He stated that Biltbest recognizes its

obligation to pay the union dues for October 2010, but the company has not had the financial ability to do so.

Pursuant to paragraph 8 of the October Order, Defendants also agreed and were ordered to create an escrow account to help defray the costs associated with Defendants' termination of their healthcare plan for a 60-day period. In connection therewith, Plaintiffs and Defendants were ordered to appoint co-administrators of the fund, who were to meet on October 25, 2010 and November 24, 2010, to determine the amount of unpaid healthcare claims and the pro-rata distribution of the account, and to promptly distribute the fund assets. Paragraph 8(g) of the October Order specifically noted that this escrow account was to be in addition to the health care incentive program already established by Defendants.

Although Mr. Susic, on behalf of Plaintiffs, sent multiple emails and had a letter hand-delivered to Mr. Sutton regarding the escrow account meetings, no one at Biltbest responded to his request to set up a time to meet. There have been no distributions from the escrow account, nor was any evidence presented that Defendants ever created such an account. The health care incentive program also ceased in mid-October. Plaintiffs estimate the amount due under paragraph 8 of the October Order is approximately $10,000 - $20,000.

At the hearing, Mr. Sutton testified that the healthcare incentive had not been paid since mid-October because Biltbest did not have the funds to pay for it. He was unsure whether the escrow account had been created, but he confirmed that no one from Biltbest had met with Plaintiffs regarding distribution of the escrow account. Mr. Sutton

explained that he made the judgment that it was not necessary to meet regarding the escrow account because the funds were not available to fund the escrow account and disburse to the Employee Plaintiffs.

It is undisputed that during the relevant time period, Biltbest found the financial wherewithal to address other creditors. Mr. Sutton testified that Biltbest generated approximately $42,000 from equipment sales in November, but Biltbest used approximately $32,500 of those funds to pay an unsecured creditor who had filed an involuntary bankruptcy petition against Biltbest, in order to obtain a dismissal of the bankruptcy proceeding. Per Mr. Sutton, the remainder went towards operational costs. Biltbest also recently paid approximately $51,000 to the Bank of Bloomsdale, its mortgage holder, to avoid a scheduled foreclosure sale. In addition, Mr. Sutton testified that the company sold certain receivables, and had intended to use a portion of those funds to comply with the obligations of the October Order, but Defendants apparently deposited those funds in their regular bank account, and the bulk of the funds were seized by a judgment creditor soon after their deposit. Again, the remaining funds were spent on operating expenses.

Defendants did not present any balance sheet or income and expense statements or other evidence reflecting Biltbest's financial condition, then or now. Nor did they present any information, whatsoever, regarding Mr. Stokes' financial condition, though he was a party to the joint stipulation that was adopted as part of the October Order.

The Court finds that Defendants have not met their burden to establish that Biltbest had the inability to comply with the October Order. Further, the Court finds Biltbest's

8

choice to use its funds to settle the involuntary bankruptcy proceeding, satisfy its bank creditor, and pay other operating expenses, rather than pay the union dues and establish the health care escrow account, to be "self-induced" and therefore not within the inability to comply defense to contempt. Indeed, had Biltbest created the separate escrow account, per the October Order, and deposited the funds from the receivables sale into that account, Defendants may have avoided seizure of the funds. Moreover, Biltbest failed to notify the Court or Plaintiffs that it believed it could not comply with paragraph 8 of the October Order, and instead intentionally ignored the requirements set out in paragraph 8. And Biltbest's financial problems cannot excuse their failure to meet with Plaintiffs' representative as ordered. Accordingly, the Court finds that Defendants have failed to comply with paragraphs 1, 2 and 8 of the October Order and are in civil contempt of Court for failure to abide by those provisions.

Lastly, paragraph 10 of the October Order required Defendant to place all employee wage withholdings that were not immediately forwarded to their final destination in an escrow account for the sole purpose of being paid out for the purpose of the withholding. Plaintiffs have shown that Defendants have failed to pay the union dues for September 2010, despite these dues being withheld from employee wages. Mr. Sutton did not testify that these dues are being held in an escrow account. Rather, he testified that he was unsure whether such an escrow account had been set up by Biltbest. He also testified that no funds were forwarded to such an account, if one existed, in October 2010, because there was no payroll made in October. Defendants did not present any evidence that Biltbest failed to set up this escrow account due to an inability to comply with

9

paragraph 10 of the October Order, and the Court therefore finds Defendants in civil contempt of Court for failing to comply with this provision, as well.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Contempt against Defendants (Doc. 66) is **GRANTED** and Defendants Biltbest Products, Inc. and Timothy Stokes are found in Civil Contempt of this Court.

**IT IS FURTHER ORDERED** that Defendants Biltbest Products, Inc. and Timothy Stokes may purge themselves of this contempt within three (3) business days of the date of this Order by fully complying with and obeying the Court's October 4, 2010 Order as follows:

> (1) immediately provide Plaintiffs with all documentation necessary to calculate the exact amount of unpaid union dues for September 2010 and October 2010;
>
> (2) immediately meet with Plaintiffs to calculate the amount required to be deposited into the health care escrow account, to partially defray the additional costs to the Employee Plaintiffs associated with the termination of Defendants' health care plan, as well as to determine the pro-rata distribution of such a fund;
>
> (3) immediately establish an escrow account in which to place all employee wage withholdings that are not immediately forwarded to their final destination; and
>
> (4) remit the amounts calculated for the unpaid union dues for September and October 2010 and fund the health care escrow account or, alternatively, provide to both Plaintiffs and the Court the information necessary to demonstrate (i) Defendants' good faith efforts to secure the agreement of secured creditors to

release funds for this purpose, and (ii) the present inability of both Biltbest and Defendant Stokes to pay these amounts.

**IT IS FURTHER ORDERED** that in the event Defendants Biltbest Products, Inc. and Timothy Stokes fail timely to purge themselves of contempt as ordered herein, this Court may impose civil contempt sanctions against them, including, but not limited to, a compliance fine of $200.00 per day as to each Defendant for every day beyond the three-day compliance period until such time as compliance is achieved.

**IT IS FURTHER ORDERED** that Defendants Biltbest Products, Inc. and Timothy Stokes shall give Plaintiffs three (3) business days advance notice of (i) any transfer or sale of assets outside the ordinary course of business, and (ii) any Biltbest payments made to, or Biltbest checks deposited by, Defendant Timothy Stokes, for salary or otherwise.

**IT IS FURTHER ORDERED** that Plaintiffs shall be entitled to an award of attorneys' fees incurred in connection with the motion for contempt. Plaintiffs shall submit a detailed, properly-supported statement of their attorneys' fees incurred, within twenty-one (21) days of the date of this order. Defendants may file any response within fourteen (14) days after the filing of Plaintiffs' statement in support of their request for attorneys' fees. Plaintiffs may file a reply within seven (7) days of the filing of any response.

**IT IS FURTHER ORDERED** that Defendant Biltbest Products, Inc.'s Motion to Strike (Doc. 89) is **DENIED** as moot.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of December, 2010.