UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RICHARD HENDERSON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:10CV01503 AGF |
| ) | |
| BILTBEST PRODUCTS INC., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Second Motion for Injunctive Relief (Doc. #66) filed by 62 individual plaintiffs, all of whom are union members who worked for Defendant Biltbest Product's Inc. (hereinafter referred to collectively as "Employee Plaintiffs"), United Steel, Paper and Forestry, Rubber Manufacturing, Energy, Allied Industrial and Service Workers International Union, Local 400G (the "Union"), and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (the "International Union").

This action was brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1132, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, against Defendants Biltbest Products, Inc. ("Biltbest"), a Missouri Corporation; and Timothy D. Stokes, the owner, sole officer, and director of Biltbest, as well as the sole trustee of the Biltbest 401(k) plan. Plaintiffs seek to have Defendants reestablish the 401(k) plan and the group medical insurance they allege was terminated in violation of the collective bargaining agreement, and restore all benefits to Plaintiffs.

They also seek to collect union dues, amounts garnished from employee wages for child support, and damages from Defendants.

In their Second Motion for Injunctive Relief, Plaintiffs seek to compel Defendants to:

(1) Cease and desist from selling the assets, equipment, furniture, building and facilities of Biltbest;

(2) Cease and desist from selling the entity Biltbest, in whole or in part;

(3) Immediately pay out the health insurance trust payments ordered by the Court on September 30, 2010; and

(4) Immediately pay all unpaid wages due and owing to the Employee Plaintiffs.

An evidentiary hearing was held on December 21, 2010. Upon review of the entire record, including parties' briefs, and for the reasons set forth below, Plaintiffs' Second Motion for Injunctive Relief shall be denied.

## **BACKGROUND**

The Employee Plaintiffs are current and former employees of Biltbest, an employer in an industry affecting commerce within the meaning of Sections 3(5), (11) and (12), of ERISA. (Doc. 80 at ¶1,7.) Defendant Timothy Stokes, Ken Grisham and Rodger Davis have identified themselves to Plaintiffs as "owners" of Biltbest. (Doc. 80 at ¶4.) Stokes is also the sole officer and director of Biltbest, as well as the sole trustee of the Biltbest 401(k) Plan. (Doc. 80 at ¶5,6.)

The Union and the International Union are labor organizations representing employees in an industry affecting commerce within the meaning of Sections 2(4), (5),

(6), and (7) of the National Labor Relations Act ("NLRA"), as amended, 29 U.S.C. §§ 152(4), (5), (6), and (7), and Section 301 of the LMRA. (Doc. 80 at ¶2,3.) At all material times, the Union has been the exclusive bargaining representative of the employees at Biltbest's facility located in Ste. Genevieve, Missouri, consisting of the Employee Plaintiffs and certain other employees. (Doc. 80 at ¶8.)

At all material times, Biltbest has been signatory to, and bound by, a collective bargaining agreement with the Union, effective on its face from June 4, 2007 to June 3, 2012 ("the collective bargaining agreement"). (Doc. 80 at ¶9.) Article 9, §9.02, of the collective bargaining agreement requires that Biltbest provide a group health insurance plan for bargaining unit employees and pay a portion of each employee's premiums. (Doc. 71 at ¶21.) Article 19, §19.01, requires that Biltbest withhold an amount equal to union dues from the wages of each employee who signs an authorization to that effect; and then remit that money to the International Union. (Doc. 71 at ¶26.) Article 21, §21.02, requires that Biltbest provide and administer a 401(k) plan for its bargaining unit employees, including matching employee contributions to the plan up to 4% of each employee's wages, and profit-sharing. (Doc. 71 at ¶15.)

On September 9, 2010, Plaintiffs filed a Motion for Injunctive Relief against Defendants based on Defendants' discontinuance of the employer's collectively bargained 401(k) plan and group health insurance and failure to remit union dues and funds garnished for child support payments. (Doc. 10.) For purposes of the hearing on that motion, the parties stipulated that: (1) Since November 2009, Biltbest has withheld union dues from employee pay checks but has failed to remit the full amount of those

dues to the International Union; (2) Biltbest announced to the Union officers on June 30, 2010 that it had terminated the 401(k) Plan; and (3) since July 1, 2010, the Biltbest medical insurance through United Healthcare has been cancelled. (Doc. 33.)

Following a hearing on Plaintiff's Motion on September 28, 2010, the parties reached an agreement on the issues presented, and on September 30, 2010, executed and submitted a Joint Stipulation on Motion for Injunctive Relief. (Doc. 38.) The Court adopted the joint stipulation in its Order on October 4, 2010 ("the October Order"). (Doc. 39.) Pursuant to paragraph 1 and 2 of the October Order, Defendants were required to remit all unpaid union dues from November 2009 through October 4, 2010 and timely remit union dues in the future. Under paragraph 8, Defendants also agreed to deposit certain amounts into an escrow account Defendants were to create and fund to help defray the costs associated with Defendants' termination of their healthcare plan. The parties appointed Michael Susic and Ed Sutton as co-administrators of the fund, and they were to meet on October 25, 2010 and November 24, 2010 to decide the distribution of the account, and promptly distribute the fund assets. In Paragraph 8(g), Defendants agreed that this escrow account was to be in addition to the health care incentive program already established by Defendants.

Prior to the hearing, on August 24, 2010, Plaintiffs had filed an Unfair Labor Practice Charge filed with the National Labor Relations Board ("NLRB"), and on October 5, 2010, this Court ordered the parties to advise the NLRB hearing officer of the Court's October Order, and to proceed expeditiously with regard to that Unfair Labor Practice Charge. (Doc. 42.) The parties represented to the Court that they complied with

this order, and on November 30, 2010, the NLRB deferred the matter to arbitration. The parties have advised the Court that an expedited arbitration hearing is anticipated to occur in January 2011.

On November 10, 2010, Defendants gave notice that Biltbest was forced into involuntary bankruptcy, at which time proceedings were stayed under the Bankruptcy Code. On December 3, 2010, Defendants gave notice that the bankruptcy proceedings had been terminated. After the automatic stay was lifted, Plaintiffs filed a second motion for injunctive relief and for contempt seeking both an order finding Defendants in contempt of this Court's October 4, 2010 Order,[1] and an injunction preventing the sale or transfer of Defendants' assets.

## DISCUSSION

**Preliminary Injunction Standard**

"The primary function of a preliminary injunction is to preserve the status quo until, upon final hearing, a court may grant full, effective relief." Kansas City So. Trans. Co., Inc. v. Teamsters Local Union # 41, 126 F.3d 1059, 1066 (8th Cir. 1997) (citation omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008). In the Eighth Circuit, these four factors are known as the "Dataphase" factors,

---

[1] Plaintiffs' motion for contempt is addressed in a separate order filed today.

based upon the 1981 en banc case, Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981).

In each case, the factors must be balanced to determine whether they tilt toward or away from granting injunctive relief. West Pub. Co. v. Mead Data Cent., Inc., 799 F.2d 1219, 1222 (8th Cir. 1986). Without a finding of irreparable injury to the moving party, however, a preliminary injunction should not be issued. Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 738 (8th Cir. 1989) (en banc). The party requesting injunctive relief bears the "complete burden" of proving that an injunction should be granted. Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987).

**Likelihood of Success on the Merits**

The Court first considers the "most significant" Dataphase factor: likelihood that the movant will prevail on the merits of its claim. Winter, 129 S. Ct. at 374; S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir.1992). At this stage in the proceeding, the court does not decide whether the movant will ultimately win, nor must the movant prove a greater-than-fifty-percent likelihood of success. See Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367, 371 (8th Cir. 1991); Dataphase, 640 F.2d at 113. Rather, the movant must show that it has a "fair chance of prevailing" on the merits. See Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds, 530 F.3d 724, 732 (8th Cir. 2008) (emphasizing that district courts should still apply the familiar "fair chance of prevailing" test where a preliminary injunction is sought to enjoin something other than government action based on presumptively reasoned democratic processes).

Plaintiffs' Second Amended Complaint states claims against Defendants for (1) injunctive relief requiring Defendants to reestablish the 401(k) Plan and restore all benefits to the Employee Plaintiffs and similarly situated others; (2) breach of fiduciary duty by discontinuing the 401(k) Plan; (3) injunctive relief requiring Defendants to reestablish the group medical insurance and restore all benefits to the Employee Plaintiffs and similarly situated others, as well as compensation for the damages incurred by Employee Plaintiffs for all medical and pharmaceutical claims incurred in the interim as though the group medical insurance had been in place; (4) injunctive relief requiring Defendants to pay to the International Union all dues collected for the period of November 2009 to date, along with interest, and to make all future payments on a timely basis in accordance with the collective bargaining agreement; (5) injunctive relief requiring Defendants to pay to the appropriate courts all amounts deducted from employee wages for child support and garnishments, and to make all future payments on a timely basis in accordance with court orders and state law; (6) breach of the collective bargaining agreement; and (7) injunctive relief requiring Defendants to pay all wages owed for the period of October 22, 2010 to date, and to pay wages in the future on a timely basis in accordance with the collective bargaining agreement. (Doc. 71.)

Many of the facts pertinent to Plaintiffs' claims are not in dispute. As set forth above, in connection with Plaintiffs' First Motion for Injunctive Relief, the parties stipulated that: (1) Since November 2009, Biltbest has withheld union dues from employee pay checks but has failed to remit the full amount of those dues to the International union; (2) Biltbest announced to the Union officers on June 30, 2010 that it

7

had terminated the 401(k) Plan; and (3) since July 1, 2010, the Biltbest medical insurance through United Healthcare has been cancelled. (Doc. 33.)

Following the October Order, it was determined that Defendants had failed to voluntarily remit $22,322.13 in union dues for the period of November 2009 through August 2010. While Defendants issued a check for this amount, it was returned for insufficient funds. Plaintiffs subsequently collected this amount through the Ste. Genevieve Prosecutor's Office. (Doc. 80 at ¶13.)

At the December 21, 2010 hearing, Plaintiffs established that union dues were withheld from the Employee Plaintiffs' wages in September 2010 and early October 2010, but were not remitted to the International Union. Apparently, wages were not paid for the remainder of October, and therefore no dues were withheld. A Department of Labor ("DOL") investigation was initiated in late October 2010 following calls from employees regarding the unpaid wages. The DOL determined that the minimum wage back wages due to 65 Biltbest employees totaled $26,933.89, and Biltbest paid this amount to the DOL in two certified bank checks, on November 3rd and 4th, respectively. Following the DOL's intervention, a concession was granted by the Union requiring that wages be paid in cash at the end of each work day and, thereafter, Biltbest has been making cash payroll on a daily basis for much of November and December.

Ed Sutton, who appears to have recently assumed the duties of Biltbest's comptroller, ultimately admitted that he did not know whether the $22,322.13 he had previously submitted to Plaintiffs in accordance with the October Order covered the delinquent union dues through September 2010. He further acknowledged that he

intentionally had not paid the union dues for October 2010 because he felt that wages for that month should be paid before union dues. He stated that Biltbest recognizes its obligation to pay the union dues for October 2010, but the company has not yet been able to do so.

There is also no dispute that Defendants terminated the health care insurance, and thereafter failed to create and fund the health care escrow account required by paragraph 8 of the October Order. (Doc. 80 at ¶13.) Paragraph 8(g) of the October Order specifically noted that this escrow account was to be in addition to the health care incentive program already established by Defendants. (Doc. 39.)

Defendants also failed to meet with Plaintiffs on October 25, 2010 or November 24, 2010 concerning the escrow account as required by paragraph 8 of the October Order, despite Plaintiffs' request. (Doc. 80 at ¶15.) Mr. Susic testified that despite multiple emails and a hand-delivered letter sent to Mr. Sutton, no one at Biltbest responded to his request to set up a time to meet. The health care incentive program also ceased in mid-October. In response, Mr. Sutton testified that the healthcare incentive had not been paid since mid-October because Biltbest did not have the funds to pay for it. He was unsure whether the escrow account had been created, but he confirmed that no one from Biltbest had met with Plaintiffs regarding distribution of the escrow account, nor had any distributions been made.

Mr. Sutton explained that he made the judgment that it was not necessary to meet regarding the escrow account because the funds were not available to fund the escrow account and disburse to the employee plaintiffs. According to Mr. Sutton's testimony,

9

Biltbest generated approximately $42,000 from equipment sales in November, but $32,500 went to settle the claim of a creditor who had tiled an involuntary bankruptcy petition against Biltbest, and the remainder went towards operational costs.

Lastly, Defendants have failed to pay the Employee Plaintiffs' full wages pursuant to the collective bargaining agreement for the period of October 11, 2010 through October 31, 2010. However, Defendants paid $26,933.89, the minimum wage owed for this period, to the DOL as the result of a DOL audit. (Doc. 80 at ¶10.)

Based upon the record before it at this stage of the proceedings, the Court concludes that Plaintiffs have met their burden of showing that they are likely to succeed on the merits of their claims, because they have established Biltbest's contractual obligation to pay dues and to maintain group health coverage and make contributions on behalf of its employees, as well as Defendants' failure to comply with those obligations.

**The Likelihood that Plaintiffs Will Suffer Irreparable Harm Absent a Preliminary Injunction**

A preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. O'Shea v. Littleton, 414 U.S. 488, 502 (1974) (cited with approval in Winter, 129 S. Ct. at 375). As the Supreme Court stated in Winter, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." 129 S. Ct. at 375. Thus, a plaintiff seeking preliminary relief must "demonstrate that irreparable injury is likely in the absence of an injunction." Id.

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009); see also CDI Energy Servs. v. West River Pumps, Inc., 567 F.3d 398, 403 (8th Cir. 2009) (citation omitted) (explaining that preliminary injunctive relief is not available where a plaintiff has "an adequate remedy at law, namely, the damages and other relief to which [it] will be entitled if [it] prevails" in the case).

At the hearing, Plaintiffs presented evidence that Biltbest had sold some of its machinery, supplies, and other assets outside the ordinary course of business. Further, they presented evidence, admitted to by Defendants, that a foreclosure sale had been scheduled by Biltbest's creditors for December 27, 2010; however, that sale has been canceled due to payment by Biltbest.

Plaintiffs now seek to enjoin any transfers or sales outside the ordinary course of business, arguing that "[i]f the assets of Biltbest are stripped or if the company itself is sold, [P]laintiffs will be unable to seek satisfaction for the amounts they are owed." (Doc. 67 at 1-2.) Plaintiffs cite several cases for the proposition that a preliminary injunction is proper where the opposing party is insolvent or near insolvency. However, these cases all precede the Supreme Court decision in Grupo Mexicano de Desarrolo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 330 (1999), which addressed the issue of whether a district court has the authority to issue a preliminary injunction under Rule 65 for the purposes of protecting assets in anticipation of the judgment of the court.

Based upon an analysis of the irreparable harm factor alone, the Court finds that the issuance of a preliminary injunction in this case would be contrary to law. The Supreme Court in Grupo held that "an unsecured creditor has no rights at law or in equity in the property of his debtor." 527 U.S. at 330. There are exceptions to this general rule. An unsecured creditor can obtain preliminary injunctive relief to prevent a defendant from disposing of assets prejudgment include situations where statutes permit the court to do so, such as in a bankruptcy action, or the Securities Act, or under statutes authorizing tax injunctions. Id. at 326-28. An unsecured creditor may also obtain preliminary injunctive relief where the complaint seeks equitable relief such as rescission of contract or restitution. Id. at 324-25.

Here, Plaintiffs have failed to allege or show any applicable exceptions to the general rule that an unsecured creditor has no rights at law or in equity in the property of his debtor. Instead, Plaintiffs assert that the irreparable harm factor militates in its favor because "[i]f the company and/or its assets are sold, plaintiffs will be unable to collect the unpaid amounts they are owed from defendants." (Doc. 67 at 6.) This assertion, alone, does not warrant injunctive relief, because it seeks to invoke the Court's equitable powers to freeze assets to protect an anticipated money judgment and is precisely the type of "race to the court house" to prevent Defendants from favoring another creditor that the Supreme Court cautioned against in Grupo. 527 U.S. at 331. See also Trustees of the Sheet Metal Workers' Local Union No. 80 Pension Trust Fund v. Winchester Land, LLC, et al., Civ. No. 10-12154, 2010 WL 2696738, *2-3 (E.D. Mich. July 7, 2010) (holding that the plaintiffs' motion for an injunction to secure Defendant's property, in which they

12

had no interest, solely to prevent Defendant from "favoring another creditor" by transferring the land to that creditor, was precisely the type of "race to the courthouse" that Grupo cautioned against). Under the law as set forth in Grupo, the injunctive relief sought by Plaintiffs is "beyond the power of the District Court." Id. at 326.

Plaintiffs have also requested that the Court order Defendants to immediately pay out the health insurance trust payments ordered by the October Order and immediately pay all unpaid wages due and owing to the employee plaintiffs.[2] However, the Court finds that Plaintiffs will not suffer irreparable harm absent injunctive relief on these two matters because they can be fully compensated through an award of money damages. See Gen. Motors Corp., 563 F.3d at 319; CDI Energy Servs., 567 F.3d at 403. Moreover, the Court notes that expedited arbitration proceedings to address each of Plaintiffs' claims are anticipated to take place in January 2011.

Plaintiffs also presented evidence that some Employee Plaintiffs are suffering potentially irreparable harm due to the cancellation of health insurance. The Court is sympathetic to these concerns, but finds that given Biltbest's current financial state, Plaintiffs have not shown that the relief they seek will properly address this harm. Indeed, what they seek could force the company to cease all operations.

**The Balance of Harms**

Even if Plaintiffs were to establish that they were threatened with irreparable harm, this harm would have to be balanced against the harm that Defendants would suffer if the

---

[2] The Court has addressed in a separate order whether Defendants are in contempt for failure to comply with the Court's October Order.

preliminary injunction were granted.  See Winter, 129 S. Ct. at 376 ("In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.") (citation omitted).

Mr. Sutton's testimony established that Defendants would suffer harm should an injunction be granted because Biltbest needs to be able to sell off certain equipment and assets in order to stay in business.  Mr. Sutton testified that in the last year, Biltbest has gone from employing approximately 68 Employee Plaintiffs on a daily basis, to employing 18 Employee Plaintiffs on a daily basis; Biltbest has also decreased office staff from 25 employees to just one person working in the office.  While Biltbest has sold off some scrap aluminum, excess equipment and defective door slabs, Mr. Sutton testified that the money raised from these sales went towards operational costs, paying off a creditor to obtain dismissal of an involuntary bankruptcy proceeding, and paying approximately $51,000 in past due mortgage payments to avoid a scheduled foreclosure.

Mr. Sutton further testified that because Biltbest has been operating in a negative cash position, he had sold some receivables to populate necessary funds.  He had intended to use a portion of those funds to comply with the obligations under the October Order, but the funds were immediately and unexpectedly seized by a judgment creditor when they arrived in Biltbest's bank account.  Mr. Sutton also believes that, at the present time, Biltbest is unable to sell off any additional assets and equipment because of the collateral positions of secured creditors.  On the record, the Court finds that the potential harm to Defendants outweighs the threat of harm to Plaintiffs, especially as Plaintiffs seek to post no bond.

**The Public Interest**

On the record before the Court, and as is often the case, the public interest does not strongly weigh in favor of either party. However, the Court notes that Plaintiffs are not Biltbest's only unsecured creditors, and actions favoring Plaintiffs may well impair other creditors. Plaintiffs had the opportunity to join in the involuntary bankruptcy proceedings in which some of their claims may have obtained priority, but Plaintiffs chose not to do so. Moreover, the actions Plaintiffs seek could well put Biltbest out of business, to the detriment of others.

## CONCLUSION

Based upon a balancing of the four <u>Dataphase</u> factors, this Court determines that a preliminary injunction is not warranted.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Second Motion for Injunctive Relief (Doc. 66) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Expedited Hearing (Doc. 68) is **DENIED** as moot.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of December, 2010.